FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

01 SEP 25  PM 4: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| HOYT W. STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. CV 99-B-0828-S |
| | ) | |
| AKZO NOBEL COATINGS, INC.; | ) | |
| OIL, CHEMICAL AND ATOMIC | ) | |
| WORKERS INTERNATIONAL | ) | |
| UNION; OIL CHEMICAL AND | ) | |
| ATOMIC WORKERS INTERNATIONAL | ) | |
| UNION, Local No. 3-488; BRIAN | ) | |
| COUSINS, | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

SEP 2 5 2001

## MEMORANDUM OPINION

Currently before the court are the Motion for Summary Judgment filed by defendant AKZO Nobel Coatings, Inc. ("defendant" or "AKZO"), Motion for Summary Judgment filed by defendant Brian Cousins ("defendant" or "Cousins"), and the Motion for Summary Judgment filed by Oil, Chemical and Atomic Workers International Union ("defendant" or "the International") and Oil, Chemical and Atomic Workers International Union, Local 3-488 ("defendant" or "Local 3-488").[1]

---

[1] The court will address the allegations in plaintiff's amended complaint filed April 28, 2000.

Count One alleges that plaintiff was subjected to a sexually hostile environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Amended Compl. at ¶ 21.) Count One names both AKZO and "the Union."[2] Count Two alleges that AKZO negligently hired, trained, and supervised Cousins, as a result of which plaintiff was caused to suffer retaliation, outrage, mental anguish, shame, embarrassment, and humiliation. (Amended Compl. at ¶ 26.) Count Three demands judgment under Alabama law against AKZO and Cousins for the tort of defamation. (Amended Compl. at ¶ 28-29.) Count Four demands judgment under Alabama law against Cousins and AKZO for the tort of invasion of privacy. (Amended Compl. at ¶ 32.) Count Five alleges that AKZO retaliated against plaintiff because he complained about Cousins's conduct and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Amended Compl. at ¶ 34.) Count Six alleges that "the Union" wrongfully retaliated against plaintiff for reporting Cousins's conduct and filing a charge of discrimination, in violation of 29 U.S.C. § 411. (Amended Compl. at ¶ 37.) Count Seven alleges that "the Union" failed to adequately represent plaintiff with regard to his complaints in the terms and conditions of employment. (Amended Compl. at ¶ 40.) Count Eight alleges that AKZO breached its employment agreement with plaintiff because plaintiff was subjected to a sexually hostile work environment and retaliated against for complaining about the hostile work environment. (Amended Compl. at ¶ 44.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motions for Summary Judgment are due to be granted.

_____

[2] Plaintiff does not distinguish between the International Union and Local 3-488 in Counts One and Six of his amended complaint.

2

## I. Statement of Facts

AKZO operates a manufacturing facility that produces industrial coatings. AKZO has had a collective bargaining relationship with the Union for many years. (AKZO Ex. A)[3] The current collective bargaining agreement was negotiated in 1998, and became effective October 1, 1998, and will remain in effect until September 30, 2001. (AKZO Ex. A at 15.) The previous collective bargaining agreement was in effect from October 1, 1995, until September 30, 1998. (AKZO Ex. B at 15.)

Plaintiff was hired as a "helper" by AKZO in 1992. (AKZO Ex. C at unnumbered 55.) In March of 1992, plaintiff was promoted to batchmaker. (AKZO Ex. C at unnumbered 39.) Eventually, plaintiff bid into the shipping department as a warehouseman. (AKZO Ex. C at unnumbered 32.) On September 10, 1998, in accordance with the Collective Bargaining Agreement, plaintiff was returned to the position of batchmaker when AKZO had a general layoff eliminating a position in the shipping department. (AKZO Ex. D at 258-63.)

Defendant Cousins became a batchmaker at AKZO in May of 1992, and currently remains in that position. (Cousins Depo. at 9.)[4] Cousins is a member of the Collective Bargaining Unit and served as Vice-President of Local 3-488 from October 1995 until October 1998. (Cousins Depo. at 130.) Cousins is not currently, nor has he ever been a supervisor or agent for AKZO, nor has he had any authority over hiring, firing, terms or conditions of

---

[3] Defendant AKZO filed Defendant AKZO Nobel Coatings, Inc.'s Notice of Filing Material in Support of Its Motion for Summary Judgment with attached exhibits A - K. Throughout this opinion references to AKZO's exhibits will be cited as "AKZO Ex." followed by the corresponding lettered tab.

[4] The deposition of Brian J. Cousins was filed on July 28, 2000. Citations to Cousins's deposition are cited as "Cousins Depo." and the corresponding page number.

employment, or labor relations policies at AZKO. (Cousins Depo. at 131.)

In April 1998, Rico Harris ("Harris"), another AKZO employee, told plaintiff that Cousins had drawn a cartoon caricature of him. (AKZO Ex. D at 66-68.) Before seeing the cartoon, plaintiff immediately reported to his supervisor that he had been depicted in a cartoon drawn by Cousins. (AKZO Ex. D at 68-70.) Plaintiff then told Cousins, "[d]on't draw no pictures of me." (AKZO Ex. D at 68-70.) Cousins told plaintiff that he had meant the picture to be funny. (Cousins Depo. at 78.) Plaintiff later saw the cartoon drawing for the first time when he found it at work. (AKZO Ex. D at 72- 73.) Plaintiff brought that copy to the Plant Superintendent, Bruce Heron ("Heron"). (AKZO Ex. D at 72- 73.) Heron told plaintiff that he had already seen the cartoon and had taken it to Tom Christner ("Christner"), General Manager in charge of the AKZO Birmingham facility. (AKZO Ex. F at 21-22.) Christner approached plaintiff while he was working and told plaintiff that Cousins's conduct would not be tolerated. (AKZO Ex. D at 77-78.) The cartoon drawing depicted Billy Robbins ("Robbins") standing behind plaintiff with his hands on plaintiff's hips and plaintiff's pants are pulled down. (Pl.'s Evid. Ex. 5 at unnumbered 1.)[5] Plaintiff is depicted as crying in the cartoon and beneath the picture is printed "Birmingham Shipping Employee Gets The Shaft From Senior Shipping Man Over Shift Work On Fridays." (Pl.'s Evid. Ex. 5 at unnumbered 1.) Plaintiff alleges that this drawing infers that he is a homosexual and constitutes sexual discrimination. (Amended Compl. at ¶ 10, 21.)

---

[5] Plaintiff filed Plaintiff's Evidentiary Submission in Opposition to Motions for Summary Judgment, with attached exhibits numbered 1-5. These exhibits will be referred to as "Pl.'s Evid. Ex." and the corresponding number.

4

There is no dispute that all copies of the cartoon were removed from AKZO as soon as possible.  Christner instructed that all copies be removed as soon as plaintiff complained about the cartoon.  (AKZO Ex. G at 69-70.)  The company initiated an investigation immediately after plaintiff lodged his complaint about Cousins's cartoon caricature of him.  (AKZO Ex. G. at 70.) Christner stated that AKZO regarded the caricature as sexually offensive and a potential violation of AKZO's work rules and sexual harassment policy.  (AKZO Ex. G at 44- 47.)

As a result of the investigation, AKZO issued Cousins a thirty day disciplinary suspension and one year probation.  (AKZO Ex. G at 73.)  Cousins filed a grievance and the grievance proceeded to arbitration under the Collective Bargaining Agreement.  (Cousins Depo. at 109.)  The arbitrator upheld the company's right to discipline Cousins for conduct violative of company rules and the sexual harassment policy but found the punishment too severe.  (AKZO Ex. H at 16.)  The arbitrator reduced the thirty day suspension to five days without pay and reduced the one year probation to six months.  (AKZO Ex. H at 16-17.)  Plaintiff contends that the company's response to his complaint was inadequate because Cousins's discipline was not severe enough.  (AKZO Ex. D. at 89.)  However, plaintiff refused to testify at Cousins's arbitration hearing despite the fact that it was his complaint which initiated the investigation and the subsequent discipline of Cousins.  (AKZO Ex. D at 90- 91.)

In August and September of 1998, AKZO reduced its workforce by twenty percent. (AKZO Ex. G. at 118-19.)  The reduction was necessitated by the loss of one of AKZO's customers.  (AKZO Ex. D. at 118.)  Christner made the decision to reduce the shipping department by one position.  (AKZO Ex. D. at 119.)  Plaintiff was moved out of the shipping department because he had the least seniority in the shipping department.  (AKZO Ex. G. at 119.)

Four batchmaker positions were downsized, but plaintiff used his seniority to select an available

batchmaker position after being removed from the shipping department.  (AKZO Ex. G at 119.)

Had plaintiff not exercised his seniority to move to the available batchmaker position, he would

have been subject to layoff.  (AKZO Ex. G at 125.)  In total, twelve AKZO employees out of

sixty were laid off in August and September 1998.  (AKZO Ex. G at 126.)

After plaintiff was transferred to the batchmaker job, he complained to his supervisor,

Heron, that no one would work with him.  (AKZO Ex. D. at 96.)  Heron stated that when plaintiff

asked for help, Heron either assigned someone to help him or would help plaintiff himself.

(AKZO Ex. D at 96- 97.)  Plaintiff complained to Heron that he was doing the hardest and

"dirtiest" batches, the "nastier colors."  (AKZO Ex. D at 98.)  Heron began to monitor the

batches and distributed the "nastier colors" among the batchmakers.  (AKZO Ex. D at 98- 99.)

Plaintiff also complained to his supervisor, Bo Martin ("Martin"), that he was being shunned and

getting the silent treatment from his co-workers, " the union people."  (AKZO Ex. D at 94- 95.)

The "silent treatment" began before plaintiff filed his EEOC charge and, according to plaintiff,

started when he complained to management about Cousins's depiction of  him in the cartoon.

(AKZO Ex. D at 95.)

In March of 2000, plaintiff, who had been disciplined two times for outbursts and losing

control of his temper, was terminated following an altercation with Tim Moultrie ("Moultrie"), a

co-worker.  (AKZO Ex. G at 148- 150.)  In September of 1997, plaintiff pushed his supervisor,

Martin, in an altercation.  (AKZO Ex. D at 125- 129.)  Plaintiff was sent home for five days

pending discharge in accordance with the Collective Bargaining Agreement.  (AKZO Ex. D at

129, Ex. A at 6.)  The Union and AKZO settled the grievance by imposing a thirty day

6

disciplinary layoff, with one year's probation and required that plaintiff attend anger management classes. (AKZO Ex. D at 129.)

In June of 1999, plaintiff had another confrontation, this time with Glenn Moore, ("Moore") a co-worker. (AKZO Ex. D at 132.) Moore was using plaintiff's ketchup and an argument ensued. (AKZO Ex. D at 120-121.) Plaintiff called Moore a "sorry piece of sh*t," and told Moore to "go to hell." (AKZO Ex. D at 121.) Plaintiff then hurled the ketchup into the sink, stormed out of the break area, and sat in his car. (AKZO Ex. D at 122.) Plaintiff was also disciplined for this incident. (AKZO Ex. D at 133.)[6]

In March of 2000, plaintiff was involved in another altercation with a co-worker, Moultrie. (AKZO Ex. D 109- 110.) Moultrie complained to the supervisor, Heron, that plaintiff was staring at him. (AKZO Ex. D at 110- 111.) After Moultrie made his complaint, plaintiff asked Heron what Moultrie had said. (AKZO Ex. D at 111.) Heron told plaintiff to leave Moultrie alone. (AKZO Ex. D at 112- 117.) Plaintiff and Moultrie got into an argument near the break room where Moultrie was changing into his work boots. (AKZO Ex. D at 116- 117.) With Heron watching, plaintiff told Moultrie that he was not afraid of him. (AKZO Ex. D at 117.) Christner made the decision to terminate plaintiff after this altercation with Moultrie due to "a pattern of behavior and misconduct that was in violation of company rules." (AKZO Ex. G at 148.) Christner made this decision because plaintiff had been involved in past altercations involving outbursts and had exhibited a lack of self-control. (AKZO Ex. G at 148, 150.)

---

[6] Stephens does not contend in this action that the discipline incurred in June of 1999 was in retaliation for having made a complaint, having filed an EEOC charge, or having filed this action on April 5, 1999.

7

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

A.    **AKZO's Motion for Summary Judgment**

   *1.    Plaintiff's Sexually Hostile Work Environment Claim*

      a.    <u>Prima Facie Case</u>

An employer may be liable for subjecting an employee to a hostile work environment if

the employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). Hostile work environment sexual harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted); *see also Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir. 1995). In order to prevail on a hostile environment sexual harassment claim under Title VII, the plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on the sex of the employee; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza v. Bordern, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999). Whether a plaintiff was subjected to conduct that rises to a level sufficient to create a hostile environment is a legal question that a court may address on summary judgment. *See id.* at 1244. The conduct at issue must be severe or pervasive enough to create an "objectively hostile or abusive work environment" to be actionable under Title VII. *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995). Thus, the "mere utterance" of a remark that engenders offense does not affect the terms, conditions, or privileges of employment to a sufficient degree to violate Title VII. *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

9

In addition, whether an environment is "hostile" or "abusive" must be determined by looking at the totality of the circumstances, considering such factors as the "frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Edwards*, 49 F.3d 1517, 1521-22 (11th Cir. 1995). The standard is "demanding," and the conduct alleged must be "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). To prove a hostile work environment due to sexual harassment the plaintiff must show that but for the fact of his sex, he would not have been the object of harassment. *Henson*, 682 F.2d at 904. Where conduct is equally offensive to both sexes, the sexual harassment is not based on sex, and a plaintiff has no Title VII remedy. *See id.*

Plaintiff presents exactly one incident, the cartoon Cousins drew of him, to support his hostile work environment claim. (Pl.'s Br. at 3.) Cousins denies that the cartoon drawing depicts a sexual act or infers sexual conduct. (Cousins Depo. at 72.) Instead, Cousins asserts that his cartoon depicts an incident in which plaintiff was complaining to another AKZO employee about overtime hours and said to the other employee, "[a]re you going to put the shaft to me." (Cousins Depo. at 106.)

AKZO asserts that there is no evidence that Cousins's cartoon constitutes "discrimination because of sex." (AKZO's Br. at 12 citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79-80 (1998) (Title VII prohibits "discriminat[ion] . . . because of . . . sex.").) Defendant cites *Gupta v. Florida Board of Regents,* 212 F.3d 571 (11th Cir. 2000), to support this contention. (Defendant AKZO Nobel Coatings, Inc.'s Brief in Support of Motion for Summary Judgment ("AKZO's Br.") at 13.) In *Gupta*, the court held:

10

> the statements and conduct must be of sexual or gender-related nature-"sexual advances, requests for sexual favors, [or] conduct of a sexual nature," *id.* at 1245, – before they are considered in determining whether the severe or pervasive requirement is met.  Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted.  Title VII, as it has been aptly observed, is not a "general civility code." *Faragher,* 524 U.S. at 788.

*Gupta,* 212 F.3d at 583.  AKZO argues that the cartoon drawing does not relate to plaintiff's sex, and even if the drawing is "tinged with offensive sexual connotations," it does not involve "sexual advances, requests for sexual favors, or conduct of a sexual nature."  (AKZO's Br. at 13.) AKZO also contends that the cartoon was not based on sex because plaintiff became upset before he saw the cartoon, and therefore, whatever upset plaintiff about being depicted in one of Cousins's cartoons "could not have been because [plaintiff] found it to be offensive on account of sex, as required by Title VII."  (AKZO's Br. at 12.)

Plaintiff contends that Cousins's cartoon was based on plaintiff's sex.  (Pl.'s Br. at 3.) First, plaintiff argues that the court should reach the same conclusion AKZO's counsel advocated in the arbitration proceeding arising from Cousins's grievance.  (*Id.* at 3-4.)  In the arbitration proceeding, AKZO's counsel, who is also AKZO's counsel in this litigation, argued that Cousins's conduct amounted to sexual harassment.  (*Id.* at 3 n.2.)  Second, plaintiff argues that the cartoon involved plaintiff's sex because Cousins conceded in his deposition that a person could interpret the drawing to mean that plaintiff was a homosexual.  (*Id.* at 5 citing Cousins Depo. at 93.)  Plaintiff also asserts that this contention is supported by the fact that all of Cousins's cartoon drawings were of male employees with homosexual overtones or engaging in homosexual acts.  (*Id.* at 5; *see* Pl.'s Evid. Ex. 5.)  Third, plaintiff argues that AKZO's contention that plaintiff was not upset by the sexual nature of the cartoon because he was upset before he

11

saw the cartoon must fail because sufficient evidence exists showing that Cousins's cartoons

generally depicted sex. (*Id.* at 5-6.) Plaintiff cites Cousins's testimony that fifty percent of the

cartoons he had drawn involved a sexual theme. (*Id.* at 6.)

The court agrees with AKZO's assertion that Cousins's cartoon of plaintiff was not

motivated by his male gender. The purpose of the cartoon was to make fun of plaintiff. (Cousins

Depo. at 92.) Plaintiff's gender was coincidental to that conduct. Sexual harassment is conduct

that would not occur but for the sex of the employee recipient. *Succar v. Dade County School

Board,* 60 F. Supp. 2d 1309, 1314 (S.D. Fla. 1999). In *Succar,* the court found that the

harassment was not gender based where a jilted lover harassed the plaintiff after their affair had

come to an end. *See id.* at 1315. The *Succar* court noted that the harasser was not motivated by

the plaintiff's gender, but by her anger toward him over their failed romance. *See id.* This case

is analogous to *Succar.* In this case, Cousins's behavior was not motivated by plaintiff's gender.

Cousins was motivated by his desire to make fun of plaintiff. Cousins's conduct would have

occurred regardless of plaintiff's gender and is therefore not actionable under Title VII. *See id.* at

1314 ("sexual harassment is conduct that would not occur but for the sex of the

employee/recipient."). Although Cousins's drawing depicts a homosexual act, that alone does

not make the drawing sexual harassment. *See Oncale,* 523 U.S. at 80 ("We have never held that

workplace harassment . . . is automatically discrimination because of sex merely because the

words used have a sexual content or connotations.")

The Eleventh Circuit describes conduct of a sexual or a gender related nature as "'sexual

advances, requests for sexual favors, or conduct of a sexual nature.'" *Gupta,* 212 F.3d at 583.

Plaintiff has not shown that the cartoon was targeted at him because he was a man. A same-sex

12

sexual harassment plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, 'but actually constituted *discrimina[tion]* . . . because of . . . sex.'" *Oncale,* 523 U.S. at 80.

However, even assuming that Cousins's drawing constitutes "discrimination because of sex," it is not sufficiently severe or persuasive to be actionable. There is no evidence that plaintiff was subjected to "long lasting, unredressed, and uninhibited sexual threats or conduct" while employed by defendant. Despite the fact that there is evidence that Cousins has drawn cartoons over a period of years, plaintiff did not offer any evidence that the cartoons were offensive to him. As the Court stated in *Oncale*, "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale,* 523 U.S. at 82. Because plaintiff has not established that the alleged harassment was based on his gender and has also not established that he was subject to harassment sufficiently severe or pervasive to alter his employment, AKZO is entitled to summary judgment on plaintiff's hostile work environment claim.

    2.    *Plaintiff's Retaliation Claims*

In order to prove a *prima facie* case of retaliation, plaintiff must establish that (1) he engaged in a protected activity; (2) his employer was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. *See Maniccia v. Brown*, 171 F. 3d 1364, 1369 (11th Cir. 1999). Plaintiff claims that he suffered the following adverse employment actions: (1) his co-workers

13

stopped talking to him; (2) his co-workers wrote "Steve, the cry baby b*tch," on his forklift; (3) someone put a note on his locker which said "A**hole Dick;" (4) supervisors came into the bathroom to tell him to return to work while other employees were allowed to read in the bathroom for hours; (5) supervisors went into the break room while plaintiff was getting water to selectively tell him to return to work; (6) he was told he could not wear sunglasses inside while other employees did; (7) he was returned back to a job from which he had previously requested to be transferred; (8) his EEOC charge was posted on the company bulletin board; and (9) he was terminated from his job. (Pl.'s Br. at 16-17.)  Plaintiff states that this conduct began shortly after filing his EEOC charge and management failed to correct the conduct of which he complained. (*Id.* at 17.) Plaintiff also contends that a casual connection exists between his engaging in a protected activity and his termination. (*Id.* at 17.)

In the context of Title VII retaliation claims, the Eleventh Circuit has held that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of an ultimate employment decision. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). Nevertheless, some "threshold level of substantiality . . . must be met" for unlawful discrimination to be cognizable under the anti-retaliation clause. *Wideman*, 141 F. 3d at 1456;[7] *cf. Doe v. DeKalb County School District*, 145 F. 3d 1441, 1453 (11th Cir. 1998) ("Any adversity must be material."). An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the compensation,

---

[7]In *Wideman,* the alleged adverse actions that satisfied the threshold level of "substantiality" included the employer or its agents requiring plaintiff to work on her day off, suspending her one for day, threatening her with being shot in the head, and needlessly delaying authorization for medical treatment. 141 F.3d at 1455.

14

terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta,* 212 F.3d at 587 (quoting *Robinson v. City of Pittsburgh.* 120 F.3d 1286, 1300 (3rd Cir. 1997). "In evaluating what actions meet the required level of substantiality, we recognize that "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Id.* (quoting *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999). "'[N]ot everything that makes an employee unhappy is an actionable adverse action,' otherwise 'every trivial personnel action that an irritable chip-on-the shoulder employee did not like would form the basis of a discrimination suit.'" *Greene v. Loewenstein, Inc.,* 99 F. Supp. 2d 1373, 1382 (S.D. Fla. 2000).

None of the actions of which plaintiff complains of rise to the level of an adverse employment action. Plaintiff did not suffer an adverse employment action when his co-workers gave him the "cold shoulder." *See Manning v. Metropolitan Life Ins., Inc.,* 127 F.3d 686, 693 (8th Cir. 1997) (ostracization by supervisors fails to rise to the level of adverse employment action); *Horvath v. Rimtec Corp.,* No. CIV. A. 99-670 (JEI), 2000 WL 1030357, at *7 (D.N.J. July 19, 2000) (no adverse employment action found where plaintiff was shunned by defendant); *Equal Employment Opportunity Commission v. Union Camp Corp.,* 7 F. Supp. 2d 1362, 1380 (S.D. Ga. 1997) ("In no case in this Circuit has the Court found an adverse employment action to encompass a situation where a supervisor has instructed employees to ignore an employee . . . ."); *Clark v. Johnson Controls World Servs., Inc.,* 939 F. Supp. 884, 891 (S.D. Ga. 1996) (no constructive discharge when employee was shunned by other employees).

AKZO asserts that the only evidence that plaintiff can use to support an adverse employment action claim is his transfer. (AKZO's Br. at 19.) AKZO argues that it is undisputed that plaintiff was transferred pursuant to business reasons and that plaintiff retained his seniority, pay, and benefits consistent with the collective bargaining agreement. (*Id.* at 19.) Plaintiff's transfer from the shipping department to the batchmaker position was the result of a reduction in workforce. (AKZO Ex. G at 118- 119.) In August and September of 1998, AKZO reduced its workforce by twenty percent. (*Id.* at 119.) The reduction was necessitated by the loss of one of AKZO's customers. (*Id.* at 118.) Christner made the decision to reduce the shipping department by one position. (*Id.* at 119.) Additionally, four of the least senior batchmakers were laid off. (*Id.* at 120.) Plaintiff was the least senior person in the shipping department but had more seniority than any of the four batchmakers who were laid off. Therefore, plaintiff used his seniority to move into an available batchmaker position. (*Id.* at 119.) The batchmaker position was, in fact, a promotion because of his seniority in the batchmaking position. (*Id.* at 120.) Had plaintiff not exercised his seniority to move to the available batchmaker position, he would have been subject to layoff. (*Id.* at 125.) Twelve AKZO employees out of sixty were laid off in August and September 1998. (*Id.* at 126.) Therefore, plaintiff's transfer did not constitute an adverse employment action. *See Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties or prestige insufficient); *McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994) (reassignment to more inconvenient job insufficient).

Plaintiff has also failed to establish the requisite causal connection between his protected conduct and any adverse employment action. Plaintiff was terminated twenty-three months after

16

Cousins's cartoon, twenty-one months after he filed the EEOC charge, and eleven months after

filing this complaint. Plaintiff has not established a causal connection between the termination

and his protected activity. *See Maniccia v. Brown,* 171 F.3d 1364, 1370 (11th Cir. 1999) (In

*Maniccia* the Eleventh Circuit found no temporal relationship between plaintiff's transfer fifteen

months and termination twenty-one months after she filed a grievance. The court also cited

authority from other jurisdictions refusing to infer a causal connection where there was,

respectively, a four-month, nine-month, and thirteen-month gap between the protected activity

and the adverse employment action.) Because plaintiff has not put forth sufficient evidence that

he suffered an adverse employment action following protected activity and because he has failed

to establish a causal connection between any adverse action and protected activity, plaintiff has

not established a prima facie case of retaliation.

Even if plaintiff could establish a prima facie case, AKZO has articulated a legitimate

non-discriminatory reason for terminating plaintiff. AKZO asserts that plaintiff was fired

because of his improper conduct. Plaintiff was terminated after an altercation with Moultrie, a

co-worker. (AKZO Ex. G at 148- 150.) Plaintiff confronted Moultrie. (AKZO Ex. F at 40- 45.)

Heron told plaintiff and Moultrie to go back to work. (AKZO Ex. F at 40- 45.) Moultrie started

to put his work boots on, but plaintiff kept shouting at Moultrie that he was not afraid of him.

(*Id.* at 44- 45.) Plaintiff was terminated after this incident. (AKZO Ex. G at 148- 50.)

Prior to his confrontation with Moultrie plaintiff had been involved in two other

altercations. In September of 1997, plaintiff shoved his supervisor, Martin. (AKZO Ex. D at

125-128.) Plaintiff was sent home for five days pending discharge in accordance with the

Collective Bargaining Agreement. (*Id.* at 129; Ex. A at 6.) The Union and AKZO settled the

17

grievance by imposing a thirty day disciplinary layoff, with a one year probationary period and required plaintiff attend anger management classes. (*Id.* at 129.) Additionally, plaintiff was involved in another altercation in June of 1999, this time with Glenn Moore ("Moore"), a co-worker. (*Id.* at 132.) Plaintiff was disciplined for the action. (*Id.* at 133.)

Defendant AKZO contends that plaintiff was terminated because of the incident with Moultrie and his history of altercations. (AKZO's Br. at 22.) Heron testified that he viewed plaintiff's conduct as more culpable than Moultrie's because Moultrie adhered to Heron's instructions when their dispute was brought to his attention, but plaintiff did not follow Heron's instructions. (AKZO's Br. at 22.) AKZO has produced a legitimate non-discriminatory reason for its termination of plaintiff and plaintiff has offered no evidence establishing that defendant's articulated reason is pretext for unlawful retaliation. Therefore AKZO is entitled to summary judgment on this claim.

### 3. *Plaintiff's Common Law Tort Claims*

#### a. Negligent Hiring, Training and Supervision

In Alabama, in order to establish the tort of negligent hiring and supervision, it is necessary to show the employer knew, or should have known at the time of hiring that the employee would likely engage in tortious conduct. *Sanders v. Shoe Shoe, Inc.*, 2000 WL 283894, *4 (Ala. Civ. App. 2000). There is no evidence that AKZO, at the time Cousins was hired, or at any other time, knew Cousins would draw a defamatory cartoon. As noted above, no evidence has been presented showing that the drawings Cousins made, prior to drawing the cartoon of plaintiff, were sufficient to place defendant on notice that the drawings or cartoons might constitute sexual harassment. When AKZO learned of the cartoon, AKZO immediately initiated

18

Case 2:99-cv-00828-SLB   Document 72   Filed 09/25/01   Page 19 of 30

an investigation and Cousins was ultimately disciplined. (AKZO Ex. G at 70, 72- 73; Ex. H a

16- 17.) Therefore, AKZO is entitled to summary judgment on plaintiff's negligent hiring,

training, and supervision claim.

        b.    Defamation

Under Alabama law, in order to prevail in a defamation action, the plaintiff must show:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged
> communication of that statement to a third party; 3) fault amounting to at least
> negligence on the part of the defendant; and 4) either actionability of the statement
> irrespective of special harm or the existence of special harm caused by the
> publication of the statement.

*Forrester v. WVTM TV, Inc.,* 709 So. 2d 23, 25 (Ala. Civ. App. 1997) (quoting *McCaig v.*

*Talladega Publishing Co.,* 544 So. 2d 875, 877 (Ala. 1989)) (quotation marks omitted). In other

words, to establish a prima facie case of defamation, plaintiff must show that AKZO was at least

negligent in publishing a false and defamatory statement concerning plaintiff. However, if

Cousins was acting outside the scope of his duties by making a false and defamatory statement

about plaintiff, then AKZO cannot be held liable for any publication by Cousins. *See K-Mart*

*Corp. v. Pendegrass,* 494 So. 2d 600, 604 (Ala. 1986) ("Basic principles of agency law operate

within the area of defamation law, of course, and this Court has held that if 'publication is sought

to be shown by an agent, it does not bind the principal as a publication . . ., unless the act of such

agent was within the line and scope of the agent so acting or employed.'").

       There is no dispute that Cousins was not acting within the line and scope of his

employment or in furtherance of defendant's business when he made the cartoon drawing of

plaintiff. Cousins's job as a batchmaker did not involve depicting plaintiff in cartoons. Cousins

testified that he made the drawing for his own personal use. (Cousins Depo. at 92.) Thus,

19

plaintiff has failed to present substantial evidence on which a reasonable jury could infer that Cousins's cartoon furthered AKZO's business. *See Atmore Community Hospital*, 719 So. 2d 1190, 1194 (Ala. 1998) (where a co-worker's behavior is aimed at satisfying the co-worker's own desires no corporate purpose is served.).

An employer may also be held liable for the intentional torts of an employee if the employer ratifies the employee's conduct. *Atmore Community Hospital,* 719 So. 2d at 1195. An employer ratifies an employee's conduct when: "(1) the employer has actual knowledge of the tortious conduct; (2) based on this knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation." *Id.* There is no evidence that AKZO knew that any of the cartoons Cousins drew prior to the one at issue in this lawsuit were considered defamatory or sexually harassing. Once AKZO knew about the cartoon depicting plaintiff, it took immediate and adequate steps to remedy the situation. AKZO disciplined Cousins for his action. (AKZO Ex. G at 70, 72- 73; Ex. H at 16- 17.) *See Atmore Community Hospital,* 719 So. 2d at 1195 ("'Adequate' means that the employer took reasonable and necessary steps to stop the tortious conduct.'"). Plaintiff has presented no evidence that he was depicted in another of Cousins's cartoons after the disciplinary action. Where the specific tortious conduct stops after corrective action by the employer, the corrective action is adequate as a matter of law. *Atmore Community Hospital,* 719 So. 2d at 1195. Thus, AKZO did not ratify plaintiff's actions, and, therefore, AKZO is entitled to summary judgment on plaintiff's defamation claim.

20

c.    Invasion of Privacy

Plaintiff claims that Cousins and AKZO are liable for Cousins's intrusion into his private

affairs because,

> in the line and scope of his employment, [Cousins] made statements to and
> undertook actions toward plaintiff of a sexually intimate and personal nature that
> were objectionable and intrusive.  Defendant Cousins' conduct toward plaintiff
> was continuos, crude, offensive, objectionable prying, and constituted an
> objectionable intrusion into plaintiff's private affairs or concerns.
>       Defendant Cousins' wrongful intrusion into plaintiff's private affairs was
> of such a nature and in such a manner as to cause him outrage, mental suffering
> and anguish, shame, embarrassment, and humiliation.

(Amended Compl. at ¶ 31, 32.)  To succeed on a claim alleging invasion of privacy relating to

sexual harassment, a plaintiff must show: "(1) that the matters intruded into are of a private

nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person

subjected to it would experience outrage, mental suffering, shame, or humiliation." *Atmore*

*Community Hospital,* 719 So. 2d at 1194.

In *Atmore Community Hospital*, the Supreme Court of Alabama held that a harasser had

invaded plaintiff's privacy when the plaintiff presented evidence that the harasser looked up her

skirt on more than one occasion.  *See id.*  In *Atmore*, the plaintiff brought suit against her harasser

and the Hospital at which they both worked.  *See id.*  However, the court held that the Hospital

could not be held liable for the harasser's conduct because the plaintiff had failed to present

evidence showing that the harasser's conduct furthered the hospital's business.  *See id.* ("An

employer is liable for the intentional torts of its employee if: . . . the employee's acts are within

the line and scope of his employment . . . .").  Evidence showed that the harasser's behavior was

aimed at satisfying his own desires.  *See id.*

21

Plaintiff's claim that AKZO is liable for an invasion of privacy relating to the alleged sexual harassment fails for two reasons. First, Cousins was not acting in furtherance of AKZO's business and, therefore, AKZO cannot be held liable for his conduct, absent ratification, and there is no evidence of ratification. Second, plaintiff has failed to present evidence establishing that the intrusion was so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation. Plaintiff testified that since Cousins drew the cartoon, no one in his community has asked whether he is a homosexual, no one has asked whether he has engaged in anal sex with another man, no one in the community has a lower opinion of him because of the cartoon or thinks he is a homosexual because of the cartoon. (Stephens Depo. at 226- 28.) In this case, the evidence demonstrates that many people were the subject of cartoons drawn by defendant Cousins. The cartoon which is the basis of plaintiff's complaint also depicts another AKZO worker, Robbins, in a sexual act with the plaintiff. (Pl.'s Evid. Ex. 5 at unnumbered 1.) Cousins's conduct fails to rise to the level necessary to constitute an invasion of privacy because, in the context of this case, a reasonable person would not experience outrage, mental suffering, shame, or humiliation. Therefore, AKZO is entitled to summary judgment on plaintiff's claim of invasion of privacy.

### d.    Breach of Contract Claim

Plaintiff alleges that AKZO breached its employment agreement with him because AKZO failed to provide an environment free of sexually hostile conduct and retaliated against him for complaining about the hostile work environment. (Amended Compl. at ¶ 43- 44.) In *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 405- 06 (1988), the United States Supreme Court stated that "if the resolution of a state-law claim depends upon the meaning of a collective bargaining

agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute." Because the collective bargaining agreement provided for a grievance procedure for discharged employees claiming unjust dismissal, plaintiff's breach of contract claim is subsumed in the terms of the collective bargaining agreement. *See Eitmann v. New Orleans Public Serv. Inc.,* 730 F.2d 359, 364 (5th Cir. 1984); *see also Darden v. United States Steel Corp.*, 830 F.2d 1116, 1119- 20 (11th Cir. 1987) (Holding that an employee's breach of contract claim was preempted by section 301 because the dispute depended on the interpretation of a collective bargaining agreement.); *Varnum v. Nu-Car Carriers, Inc.,* 804 F.2d 638, 644 (11th Cir. 1986); (The Eleventh Circuit held that plaintiff's complaint was not preempted by Section 301 because plaintiff's complaint focused on conduct that occurred prior to plaintiff accepting employment.).

Further, a policy in an employee handbook does not create a contract between the employee and the employer. *See Bell v. South Central Bell,* 564 So. 2d 46, 48 (Ala. 1990) (Employee handbook did not create a contract to rehabilitate alcoholic employees.) The collective bargaining agreement governs the employment relationship between plaintiff and AKZO. Here, plaintiff's claim that AKZO has a contractual obligation, enforceable under Alabama common law, regarding a term or condition of employment independent of the collective bargaining agreement is preempted by the collective bargaining agreement. Therefore, summary judgment is due to be granted on this claim.

23

## B. Cousins's Motion for Summary Judgment

Cousins claims that plaintiff's state law claim for defamation is preempted by § 301,

(Cousins's Br. at 2); plaintiff cannot establish a claim for defamation, (Cousins's Br. at 6);

plaintiff's state law claim for invasion of privacy is preempted by § 301, (Cousins's Br. at 8); and

plaintiff cannot establish the elements of an invasion of privacy claim, (Cousins's Br. at 8).

Because the court finds that plaintiff cannot maintain a claim for defamation or invasion of

privacy, the court does not address whether either claim is preempted by § 301 of the Labor

Management Relations Act ("LMRA").

### 1.    Plaintiff's Defamation Claim

Under Alabama law, in order to prevail in a defamation action, the plaintiff must show:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged
> communication of that statement to a third party; 3) fault amounting to at least
> negligence on the part of the defendant; and 4) either actionability of the statement
> irrespective of special harm or the existence of special harm caused by the
> publication of the statement.

*Forrester v. WVTM TV, Inc.,* 709 So. 2d 23, 25 (Ala. Civ. App. 1997) (quoting *McCaig v.*

*Talladega Publishing Co.,* 544 So. 2d 875, 877 (Ala. 1989)). A communication is considered

defamatory "if it tends to so harm the reputation of another as to lower him in the estimation of

the community or to deter third persons from associating or dealing with him." *Harris v. School*

*Annual Publishing Co.,* 466 So. 2d 963, 964 (Ala. 1985). "Whether the communication is

reasonably capable of a defamatory meaning is a question, in the first instance, for the court." *Id.*

"If the communication is not reasonably capable of a defamatory meaning there is no issue of

fact, and summary judgment is proper." *Id.*

The record establishes that plaintiff and Robbins, who were depicted in the cartoon, are not homosexuals partners and that no one at the facility believed them to be after viewing the cartoon. (OCAW's Evid. Ex. A at 225-28.) Plaintiff testified that no one in his neighborhood or community or his wife's church thinks he is a homosexual because of this cartoon. (*Id.* at 225-28; 231-34.) Plaintiff has identified no third party who has been deterred from dealing with him because of the cartoon. There is no evidence that plaintiff's reputation was tarnished. (*Id.* at 225-28; 231-34.) Plaintiff stated that as a result of the caricature, he was exposed to hatred, ridicule, and contempt from his co-employees. (Pl.'s Br. at 28.) None of the statements which plaintiff cites support this contention. Plaintiff cites to the same actions he alleges constitute adverse employment actions. (*Compare* Pl.'s Br. at 14-17 *with* Pl.'s Br. at 28.) None of the cited testimony addresses any comments or opinions that plaintiff is homosexual or has engaged in homosexual activities. Although the cartoon at issue is clearly offensive and crude, plaintiff has not put forth sufficient evidence on which a reasonable jury could find all the elements of a defamation claim. Therefore, Cousins is entitled to judgment as a matter of law.

### 2. Plaintiff's Invasion of Privacy Claim

Cousins also moves for summary judgment on plaintiff's invasion of privacy claim. (Cousins's Br. at 8.) To succeed on a claim alleging invasion of privacy relating to sexual harassment, a plaintiff must show: "(1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation." *Atmore Community Hospital,* 719 So. 2d at 1194.

Plaintiff argues that incidents of sexual harassment may also constitute an invasion of privacy. (Pl.'s Br. at 26.) Plaintiff cites two cases to support his contention, *Busby v. Truswal Systems Corp.,* 551 So. 2d 322 (Ala. 1989) and *Potts v. BE & K Construction Co.,* 604 So. 2d 398 (Ala. 1992). Plaintiff asserts that a jury could reasonably determine from the evidence that Cousins's depiction of plaintiff in a homosexual act constitutes an intrusion into plaintiff's private affairs. (Pl.'s Br. at 26.) Cousins cites *Brassfield v. Jack McClendon Furniture, Inc.,* 953 F. Supp. 1438, 1456 (M.D. Ala. 1996). In *Brassfield*, the court cited four cases in which the Alabama Supreme Court decided whether comments and questions of a sexual nature were sufficiently outrageous to support a claim for invasion of privacy. (Cousins's Br. at 10.) In one of the cases cited, the Alabama Supreme Court held that the defendant's statement that the plaintiff was "queer as a three dollar bill" was not outrageous enough to maintain an invasion of privacy claim. *See id.* at 1456 (citing *Logan v. Sears, Roebuck & Co.,* 466 So. 2d 121, 123-24 (Ala. 1985)). Plaintiff asserts that his case is distinguishable because he is not a homosexual and the plaintiff in *Brassfield* was a homosexual. (Pl.'s Br. at 27.)

Plaintiff's arguments are without merit. First, as noted in part III(A) of this Memorandum Opinion, plaintiff was not a victim of sexual harassment. Second, plaintiff misses the point. He cannot distinguish *Brassfield* because the plaintiff in that case was a homosexual. Whether the plaintiff in *Brassfield* was a homosexual is not relevant. Further, the statement "queer as a three dollar bill" was made in a case the *Brassfield* opinion cited and was not made to the plaintiff in *Brassfield. See Brassfield*, 953 F. Supp. at 1456. Cousins cites *Brassfield* because it discusses several invasion of privacy cases, one of which held that the statement "queer as a three dollar bill" was not severe enough to amount to an invasion of privacy. Plaintiff was made the subject

of a cartoon drawing on one occasion. Plaintiff was not touched in a sexual manner or propositioned. Cousins's conduct in this case is not egregious enough to cause outrage to a person of ordinary sensibilities. For the reasons stated above, plaintiff has not established a claim for invasion of privacy. Therefore, Cousins's Motion for Summary Judgment is due to be granted on this claim as well.

## C.     Oil, Chemical & Atomic Workers International Union and Oil, Chemical & Atomic Workers International Union, Local 3-488 Motion for Summary Judgment

The International Union and the Local 3-488 claim that plaintiff failed to exhaust his administrative remedies, (OCAW's Br. at 13), that his Title VII claims fail as a matter of law, (*Id.*. at 15), that neither the International Union nor the Local 3-488 breached its duty of fair representation, (*Id.* at 19), and that plaintiff's Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq* ("LMRDA") claim fails, (*Id.* at 27).

### 1.     *Plaintiff Failed to Exhaust His Administrative Remedies*

First, the International Union claims that plaintiff failed to exhaust his administrative remedies because he failed to file a charge of discrimination against the International Union in any of the three charges he filed with the EEOC. (OCAW's Br. at 13.) Plaintiff only filed charges against Local 3-488. (Ex. A at 240-242; Ex. H, ¶ 13.) It is clear that "a party not named in an EEOC charge may not be sued under Title VII." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905 (7th Cir. 1981). Therefore, the International is entitled to summary judgment on plaintiff's Title VII claims.

27

### 2.    *Plaintiff's Title VII Claims Fail as a Matter of Law*

Both the International Union and Local 3-488 assert that plaintiff's claim under Title VII

fails as a matter of law.  (OCAW's Br. at 15.)  First, the International Union and Local 3-488

assert that they have no duty to provide a hostile free work environment.  (OCAW's Br. at 15.)

Both the International and Local 3-488 assert that any hostile environment claim lies only against

AKZO.  (OCAW's Br. at 15.)  The court agrees that neither the International Union nor Local 3-

488 are responsible for providing a hostile free work environment.  There is no language in 42

U.S.C. § 2000e-2(a)(1) which imposes liability upon a union for discrimination with respect to

an employee's terms and conditions of employment.[8]  Even if plaintiff had adequately pled such

a claim against Local 3-488 or the International, plaintiff has failed to establish the requisite

elements necessary to maintain a sexually hostile work environment claim as discussed in part

(A)(1) of this Memorandum Opinion.

### 3.    *Plaintiff's LMRDA Claims*

Plaintiff alleges that "the Union" wrongfully retaliated against him after he filed charges

with the EEOC in violation of Title 29 U.S.C. § 411.  (Amended Compl. at ¶ 37.)  There are five

subsections in 29 U.S.C. § 411, (a)(1)(equal rights), (a)(2) freedom of speech and assembly,

(a)(3)(dues, initiation fees, and assessments), (a)(4) (protection of the right to sue), and (a)(5)

(improper discipline).  Plaintiff does not allege which one of the subsections was violated.

Sections (a)(3) and (a)(4) are not applicable here as there are no facts that would support any

---

[8] "(a)  Employer practices
It shall be an unlawful employment practice for *an employer*
(1) . . .to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).

such claim.

Plaintiff argues that the International and Local 3-488 retaliated against him by posting

his EEOC complaint on the company bulletin board and because union members gave him the

"cold shoulder." (Pl.'s Br. at 21- 22.)  However, plaintiff testified that fellow employees and

union members continued to offer him lunch invitations, offer him rides when his car failed,

assist him with banking paper work, and helped him bail one of his friends out of jail.  (OCAW's

Evid. Ex. A at 195-199.)  After plaintiff filed his EEOC complaint, he continued to vote at Union

meetings and continued to attend and participate in Union activities, without incident, until he

was terminated by AKZO.  (*Id.* at 174-78, 236.)  There is no factual basis to permit the court to

conclude that plaintiff's rights under 29 U.S.C. § 411 (a)(1) and (a)(2), were in any way violated.

Plaintiff argues in his brief that defendant Unions have violated 29 U.S.C. § 411 "by

denying him protection of the right to sue." (Pl.'s Br. at 21.)  Plaintiff argues "a reasonable jury

could conclude that the posting of plaintiff's EEOC Charge [on a Union bulletin board] was an

attempt to intimidate him to the extent he quit the Union, quit AKZO, or decided not to pursue

litigation once he had satisfied the administrative requirements by filing his EEOC charge."

(Pl.'s Br. at 22.)  Contrary to plaintiff's argument, there is no evidence that either Union limited

plaintiff's right to institute action in court or in a proceeding before an administrative agency.

Furthermore, in order to pursue a claim under § 411, plaintiff must have exhausted the

applicable internal union remedies before filing suit. *See* 29 U.S.C. § 411(a)(4).  Plaintiff failed

to file an internal union appeal in accordance with either Local 3-488 or the International Union

applicable bylaws. ((OCAW's Evid. Ex. at 237.)  Accordingly, the International Union and

Local 3-488 are entitled to summary judgment on plaintiff's LMRDA claim.

4.    *Plaintiff's Breach of the Duty of Fair Representation Claims*

It is well settled that a breach of the duty of fair representation claim under section 301

must be brought within six months of when the member knew, or should have known, of the

Union's final action. *Adams v. United Paper Workers International Union*, 189 F.3d 1321, 1322

(11th Cir. 1999) (citing *Del Costello v. Teamsters,* 462 U.S. 151, 161-65 (1983)).  Plaintiff

concedes that he did not file a charge with the NLRB within six months of the Union's final

action, and therefore, plaintiff's claim of inadequate representation is due to be dismissed. (Pl.'s

Br. at 29.)

## IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that AKZO Nobel Coatings, Inc.'s

Motion for Summary Judgment is due to be granted; Oil, Chemical and Atomic Workers

International Union and Oil, Chemical and Atomic Workers International Union, Local 3-488's

Motion for Summary Judgment is due to be granted; and Brian Cousins's Motion for Summary

Judgment is due to be granted.  All claims against defendants are due to be dismissed with

prejudice.  An Order in accordance with this Memorandum Opinion will be entered

contemporaneously herewith.

**DONE** this 25th day of September, 2001.


**SHARON LOVELACE BLACKBURN**
United States District Judge

30